```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
 2                         RICHMOND DIVISION

 3    -------------------------------------------

 4    HAMILTON BEACH BRANDS, INC.,

 5
                                   Plaintiff;
 6    v.                                        Civil Action

 7                                                 3:11CV345

 8    SUNBEAM PRODUCTS, INC., d/b/a JARDEN
      CONSUMER SOLUTIONS,
 9                                 Defendant.

10    -------------------------------------------

11                         February 7, 2012
                           Richmond, Virginia
12                            9:00 a.m.

13                         MOTIONS HEARING

14    BEFORE:        HONORABLE JAMES R. SPENCER
                     Chief United States District Judge
15

16    APPEARANCES:   FREDERICK A. TECCE, ESQ.
                     ROBERT M. TYLER, ESQ.
17
                            Counsel for Plaintiff;
18

19
                     RICHARD D. HARRIS, ESQ.
20                   JACK LIN, ESQ.
                     KIMBERLY A. WARSHAWSKY, ESQ.
21
                            Counsel for Defendant.
22

23

24

25                       JEFFREY B. KULL
                      OFFICIAL COURT REPORTER
```

```
 1                      P-R-O-C-E-E-D-I-N-G-S
 2           THE CLERK:  Case number 3:11CR345:  Hamilton
 3    Beach Brands, Inc. versus Sunbeam Products, Inc.  Hamilton
 4    Beach is represented by Frederick Tecce and Robert Tyler.
 5    Sunbeam is represented by Richard D. Harris, Kimberly A.
 6    Warshawsky, and Jack Lin.  Are counsel ready to proceed?
 7           MR. TECCE:  Frederick Tecce.  We are ready to
 8    proceed on behalf of Hamilton Beach.
 9           MR. HARRIS:  Richard Harris, and with me is
10    Kimberly Warshawsky and Jack Lin.  We, too, are ready to
11    proceed.
12           THE COURT:  Thank you very much.  Hamilton Beach
13    has a number of motions.  I will hear from you.
14    Understand that we have gone through the time and effort
15    to review your pleadings.  All the paper in front of you
16    is making me nervous.  Come on up and I'll hear you.  But
17    let's not repeat ourselves too much.
18           MR. TECCE:  We will not, Your Honor.  Your
19    Honor, do you want me to handle both of them at once?
20           THE COURT:  Yes, let's go through the whole
21    thing.
22           MR. TECCE:  If it is all right with Your Honor,
23    I'd like to talk about the protective order first.
24           THE COURT:  Sure.
25           MR. TECCE:  The bottom line is, Your Honor, that
```

1    both of these motions come about as a result of the fact

2    that Hamilton Beach -- I'm sorry, Sunbeam chooses to

3    ignore the rules.  And we have been dealing with this.  A

4    lot of it we haven't wasted Your Honor's time with, and

5    when we call them on it we get this "no harm no foul" from

6    them.  But ultimately, if all they were doing was ignoring

7    the rules, that would be somewhat difficult, but somewhat

8    benign.  But in these instances, what Sunbeam does is they

9    ignore the rules and then turn around and attack Hamilton

10   Beach and try and blame us for something that clearly was

11   not our responsibility.

12          With respect to the motion for protective order,

13   Your Honor, I'll go through the facts quickly.  But

14   ultimately, as a result of the facts, we had no choice but

15   to file a motion for a protective order.  They had

16   originally noticed this deposition on the 19th of

17   December.  It was to take place on the 10th of January.

18   We indicated that there was going to be one individual who

19   was going to testify on two topics that were set forth in

20   two separate 30(b)(6) notices.  That individual was Scott

21   Tidey.  Hamilton Beach was prepared to go forward on the

22   10th with Mr. Tidey's deposition.  As a result of a

23   conflict on Sunbeam's counsel's part, which they admit to

24   in Footnote 4, they were not prepared to go forward on

25   that day so we didn't go.  But the rules are very

1    straightforward about if you have a problem, and the

2    procedures are straightforward, if you have a problem with

3    respect to who we have designated, which is Hamilton

4    Beach's right to designate any number of witnesses we want

5    for a 30(b)(6) notice, if you have a problem with that,

6    the procedures are very clear.  Depose the guy for seven

7    hours on January 10th, which was the date they had put in

8    their notice and we were prepared to respond to and comply

9    with, but seven hours.  If there was an issue, come back.

10   First of all, if they had come back and said, "We need

11   four, five, or three more hours," that would have been a

12   lot less work than preparing the motion for Your Honor and

13   coming back down here.

14           Unfortunately, they kept pushing and pushing.  I

15   won't go through the documents in general, but we made it

16   clear there was only going to be one witness.  We tried to

17   resolve this in Your Honor's conference room the last time

18   we were down here.  They said, "Send your cases."  We sent

19   the cases.  They said, "No, you haven't cited a Fourth

20   Circuit case on point.  We want the guy for two days."  We

21   wrote them in January, "When are you going to go forward

22   with Scott Tidey?"  Because we haven't heard from them

23   since the 16th.  We said he is available the 8th or 9th.

24   This is two or three weeks after he should have been

25   deposed.  Finally, we hear and they say, "We want him on

1   both days.  We are at the end of the discovery period.

2   This is unfair.  You have stonewalled us.  You have made

3   it difficult."

4           We have been clear on our position on this, and

5   had they complied with their own deposition notice on

6   January 10th, this would not have been an issue.  With

7   respect to the facts, the facts really don't support any

8   type of allegation that Hamilton Beach has done anything

9   untoward or improper.  The rules are very clear, Judge.

10  30(b)(6) is clear.  They have the opportunity, they can

11  issue notices.  They chose to issue three notices.  Rule

12  30(a)(2) upon which they rely indicates that you can't

13  depose a witness more than once without leave of the

14  Court.  The witness is the Hamilton Beach Corporation

15  under 30(b)(6).  If we designate more than one person,

16  then they have the opportunity to depose each one of those

17  for seven hours.  But it is still one witness.

18          And although there are not a lot of cases,

19  there's at least one or two cases where the circumstances

20  are exactly as Sunbeam has done here.  They chose to issue

21  three 30(b)(6) notices and then chastise us when we turn

22  around and say, "We are going to give you one witness to

23  testify about two of your notices."  They don't get to

24  designate how many people we produce to respond to their

25  notice.  We do.  That's in the rules.  This is a very

1   simple, straightforward construction of a rule that is

2   simple and straightforward on its face.  The comments of

3   the rules make it very clear.  This is a single

4   deposition, a single witness.

5          Their argument that they can choose to issue

6   three notices because somehow even though they are under

7   ten, there this is no issue with that, that argument, I

8   mean, quite frankly, under their rationale and their

9   reasoning, if they wanted to depose the same witness for

10  70 hours they could use all ten of their notices and

11  notice the same witness ten times.  That's not the rule,

12  that's not the law.  With respect to the protective order

13  issue, we had no choice but to file a motion in front of

14  Your Honor and seek a determination on this issue.  So

15  that's the discovery dispute.

16         The second issue before Your Honor has to do

17  with whether or not Hamilton Beach has complied with its

18  obligations under Your Honor's July 1st, 2011 order.  Your

19  order was very specific, Your Honor.  Your language was

20  very clear.  They were to provide a detailed and complete

21  explanation of all prior art upon which they intended to

22  rely.  If Your Honor looks at their papers, both that we

23  filed and that they filed, Sunbeam's detailed and complete

24  explanation as to certain references is in there.  It is

25  page after page after page.  But in this instance, they

1    chose to ignore first of all the prior art of the on-sale
2    bar issue, and ten other prior art references which had
3    been originally included -- ten additional references
4    which are now in their expert report, which we got at the
5    end of December.
6            Judge, as Mr. Tyler said last night, this is a
7    real simple issue.  This is like an eighth grade math
8    problem.  Your Honor told them to show their work.  It is
9    that simple.  They chose not to do it.  And instead, what
10   we've gotten from them is two things:  One, we've gotten
11   from them, "Oh, we already showed you what we did.  We
12   have already given you a detailed and complete
13   explanation."  Well, if Your Honor looks at Paragraph 27,
14   I think, of Dr. Swanger's report, the entire thing is one
15   paragraph and it states "This was on sale."  That is not a
16   detailed review, a detailed and complete analysis of what
17   was on sale.  The Federal Circuit is very clear.  They,
18   being Sunbeam, have to identify what was on sale and they
19   have to compare it to the claims that are asserted.
20   There's not a lot of claims here, there's three or four.
21   "Here is the device, here is the claim, here is where
22   every element of the claim was found in the device that
23   was on sale."  It is expert testimony.  The Federal
24   Circuit has been clear that in order to support an
25   invalidity defense, you need expert testimony, not lawyer

1    argument.  So they haven't done what Your Honor said to

2    do, and it is one page, Page 24, Paragraph 47.

3           The second argument is that somehow Hamilton

4    Beach, once again, stonewalled them, failed to comply with

5    their discovery obligations, didn't do what they were

6    supposed to.  They go on this attack which unfortunately

7    has become more prevalent in this case.  If you look at

8    Page 24 of their response, the pages, the specific pages

9    on which their expert relies in support of his conclusory

10   allegation that everything was -- every element of the

11   claim was in the device that was on sale, were documents

12   that were timely produced in this case in response to

13   their document request in October.  They have never once,

14   ever, written a letter to us and said, "We need additional

15   documents to comply with the Court's order on our list of

16   prior art."  In fact, Judge, we called this to their

17   attention in October.  We actually called it to their

18   attention earlier than that and they ignored us.  They

19   have never written us a letter saying, "We disagree with

20   you, you need to produce X, Y, and Z and we will

21   supplement our list of prior art."  We never got a letter

22   from them demanding that that we produce additional

23   documents so they can specifically supplement their list

24   of prior art.

25           They are not bashful.  They have written

1    countless letters about alleged discovery abuses.  But

2    they have never once raised this issue.  So this argument

3    that we are responsible for not complying with Your

4    Honor's order is not supported by the facts in the record.

5    And quite frankly, I use the term "doublespeak" in my

6    reply, but that's not what it is.  They have made two

7    arguments.  "We have complied; we have given them

8    everything they are entitled to under the rule."  And then

9    the second argument is, "No, we haven't given them

10   everything because we need stuff from them."  The facts

11   don't support either side of that argument.  The fact of

12   the matter is, we were to get a detailed and complete

13   listing of the prior art, commensurate with what they gave

14   us for the references they did do, and they didn't give

15   that to us.

16           It is not harmless, Judge.  It is not harmless.

17   This is akin to them providing me with a Rule 26 report

18   that says, "My expert is going to testify in front of the

19   jury that your product was on sale more than a year prior

20   to the filing date."  And that's it.  Then he gets up

21   there and starts telling the jury, "Well, I've compared

22   this document, I've looked at this device that was on sale

23   and I've compared it to the claims, and let me explain it

24   to you."  I stand up and say, "Objection, Your Honor.  I

25   wasn't given the facts and the analysis upon which this

1   guy based his conclusions.  All I got was the conclusion."

2   Your Honor would say, most likely, "Sustained."  That's

3   exactly what's going on here.  They keep telling us, "Your

4   product was on sale more than a year prior to the filing

5   date."  I understand that's their contention.  But Your

6   Honor's order told them to give me a detailed and complete

7   analysis and review of what supports that contention.

8   They didn't do that.  Having not done that, the only

9   alternative we have was to seek to have Your Honor strike

10  it.  One moment, Your Honor.  Thank you, Your Honor.

11          MR. HARRIS:  With the Court's permission, I'd

12  like to address each of Mr. Tecce's arguments slightly out

13  of order.  Ms. Warshawsky is going to be addressing the

14  issue of the protective order on Mr. Tidey.  I would like

15  to have her address that after we address some very

16  straightforward, simple response to Mr. Tecce's argument

17  on the prior art statement.

18          Number one, obviously, Mr. Tecce and Hamilton

19  Beach are attempting to use this purported omission of the

20  actual article, the Stay or Go article itself, from being

21  listed on a prior art list as some kind of veiled summary

22  judgment motion to duck the on-sale bar, which is one of

23  the biggest, obviously known issues in this case.  It was

24  brought up repeatedly during briefing, during argument

25  with regard to the preliminary injunction hearing and the

1    like.  This is no secret.  Plaintiff has been on notice of

2    the contention of the on-sale bar ever since they finally

3    started producing documents that showed that the product

4    had been on sale three to five months.

5            Moreover, Your Honor, that particular article,

6    the article itself, is not prior art until this Court says

7    it is prior art.  We've got an obligation as Sunbeam,

8    obviously, the defendant, to establish clearly and

9    convincingly that that article was on sale more than a

10   year.  Until that point in time it is not prior art.  But

11   we are listening to Mr. Tecce argue, Your Honor, "We had

12   no idea.  We were ignorant.  Certainly at a minimum we are

13   entitled to know whether that article responds to the

14   patent claims, either the '831 patent, the predecessor

15   patent, or the '928 patent."  And I have a problem with

16   that argument, Your Honor.  And the reason I have a

17   problem with that argument is because it is disingenuous

18   at the minimum.

19           Number one, whether or not it was prior art or

20   not or whether it was contemplated that that would be on a

21   list is one question, one issue.  In this particular case,

22   that particular article, under oath by Hamilton Beach, was

23   stated to be covered by the patent.  So if I may approach

24   Your Honor, after all, your July 1st order was to give

25   Hamilton Beach an opportunity to know what is the prior

1    art, the actual prior art that's being cited, and why is

2    it relevant.  Your Honor, if I may approach, on three

3    separate occasions, one of them under oath, we

4    have -- Hamilton Beach actually confirming it that their

5    Stay or Go product is covered by the '831 and '928 patent.

6           MR. TECCE:  I'm sorry to interrupt.  Can we see

7    a copy of what Your Honor has or at least tell me where it

8    is in the papers so I can look at it?

9           MR. HARRIS:  Not a problem.  Mr. Tecce, here you

10    go.  Let's start with the one under oath, Your Honor, the

11    one captioned Exhibit B to Plaintiff's Brief in Support of

12    its Motion for Preliminary Injunction.  We hear Mr. Tecce

13    argue that "We have simply no idea, we are entitled to

14    know how and if that Stay or Go product that's the subject

15    of an on-sale bar, at least from Sunbeam's perspective,

16    how it responds with regard to the patent."  If you go to

17    Page 2 of 7 of the Declaration of Mr. Scott Tidey that was

18    submitted in support of the preliminary injunction, you

19    will see at Paragraph 9 and at Paragraph 11 two references

20    made under oath on behalf of Hamilton Beach that suggests,

21    actually states, that "The engineering development work

22    has resulted in the award of several U.S. Patents

23    including the '928, entitled Slow Cooker, which issued on

24    May 24th."  It says, "covering new and novel aspects of

25    the slow cooker products."  At Paragraph 11:  "In or about

1    the fourth quarter, 2005, Hamilton Beach started selling

2    Stay or Go slow cookers, which include the patented

3    over-the-center clips found in the '928 patent as well as

4    the '831 and '353 design patents."

5            Under oath, their patents cover the Stay or Go

6    product.

7            If we take a it look at the deposition page,

8    stamped "Highly Confidential," deposition of John Barnes,

9    this was taken just a couple weeks ago, Your Honor, he is

10   one of the named inventors.  And we could hit each of the

11   three.  We were referring to the '831 patent and the '928

12   patents.  At Page 120:  Which of those two patents do you

13   believe covers Defendant's Exhibit 121?"  121 is the Stay

14   or Go product at the deposition, sticker and all.  Answer:

15   "Both of them."

16           Again, at Page 246:  "Question:  By the way,

17   just so I recall, when we are looking at Defendant's

18   Exhibit 121, the Stay or Go cooker that's on the floor

19   next to you over there -- Answer:  That one?  Question:

20   Yeah.  Answer:  Our Hamilton Beach model?  Question:

21   Yeah.  Answer:  Okay.  Question:  That particular device

22   is a commercial embodiment of both the '831 and '928

23   patents; is that correct, sir?"  At which point Mr. Tecce

24   objects because it had already been asked and answered.

25   And the witness answers:  "Yes."

1       Finally, Your Honor, in the brief itself to

2  which that Declaration we referred to, Plaintiff's Brief

3  in Support of its Motion for Preliminary Injunction, at

4  Page 17, at the penultimate line there starting with

5  "having multiple patents on the Stay or Go slow cooker

6  furthers this objective," that's Page 17, the very last

7  sentence on the page, it is incomplete, refers to the fact

8  that their patents, the '831 and '928 patents amongst

9  them, cover their Stay or Go cooker.

10       So in terms of the argument here and the basis

11  for the argument, Hamilton Beach knows fully well that

12  their two patents, the '831 and '928 patent, covers.  And

13  what they are doing is they are attempting to claim that

14  because we didn't pre-suppose in advance that the Stay or

15  Go cooker itself had been sold more than a year ahead

16  before this Court concludes that, but not having assumed

17  that and putting it down to put them on notice of

18  something of which they already knew fully well, that it

19  is the '831 and '928 patents, again, is more than

20  disingenuous.

21       Your Honor, there was a second part to

22  plaintiff's motion which I wanted to address.  They cite

23  the fact that ten admittedly secondary patents that were

24  listed in Dr. Swanger's initial report and were included

25  with the evidence that had been given to the Court --

```
1              THE COURT:  I view those as two separate issues.
2              MR. HARRIS:  I understand, Your Honor.  It
3    wasn't raised by Mr. Tecce in argument, and I wanted to
4    address it.
5              THE COURT:  Sure.
6              MR. HARRIS:  With regard to those particular
7    items, those items admittedly are cumulative to the
8    disclosures of other prior art.  The disclosures, the
9    actual physical elements of what we disclosed, after all,
10   we are looking at a technology that's a slow cooker with
11   clips, that's the technology here, that information was
12   disclosed in the Swanger report.  And there is a
13   suggestion by Mr. Tecce, "Oh, my goodness, how is anyone
14   going to know what the disclosures are?"  Your Honor, I
15   have their expert's report, they brought in a second
16   expert now beyond Dr. Bressler, they've got Dr. Caulfield,
17   who was able, page after page through his report, he spent
18   about 12 pages on those ten references, dissecting exactly
19   what they do disclose and what they purportedly don't
20   disclose.
21             So in terms of Hamilton Beach being on notice of
22   what those particular elements disclose, and not having to
23   add more parsed paragraphs for supplemental, peripheral
24   prior art references, there is -- they were on notice,
25   they know what they disclosed.  In fact, their expert
```

1  witness relied on the disclosures of those references and

2  picked them apart, went through item by item what he

3  believed was shown and was not shown.  So the suggestion

4  that they simply didn't know is probably as disingenuous

5  as the one that they had no idea what their own Stay or Go

6  cooker showed.

7         With that, Your Honor, I'd like to turn over the

8  argument to Ms. Warshawsky to address the protective order

9  with the Court's permission.

10        THE COURT:  All right.  I noticed neither one of

11 you have addressed this issue of Hamilton Beach's motion

12 to strike portions of Swanger's rebuttal report having to

13 do with the hook business.

14        MR. HARRIS:  We are prepared to argue it today.

15 Our response brief isn't due for, I think, until the 17th.

16 We can argue it today.

17        THE COURT:  I would just as soon have it argued

18 today while you are here.  I know you haven't responded.

19        MR. HARRIS:  Very well.

20        THE COURT:  I'll hear her and then we can handle

21 that.

22        MS. WARSHAWSKY:  Thank you, Your Honor.  The

23 title of Hamilton Beach's motion says it all.  This is not

24 a motion for protective order to protect Hamilton Beach

25 witnesses.  This is a motion to protect solely Scott

| | |
|---|---|
| 1 | Tidey, who is the witness who you saw in the preliminary |
| 2 | injunction hearing and who testified on behalf of Hamilton |
| 3 | Beach regarding marketing issues. |
| 4 | I don't want to belabor the point, but I'll back |
| 5 | up a little bit.  Mr. Tecce's presentation glossed over |
| 6 | some of the history here.  Mr. Tecce's presentation made |
| 7 | it seem like Sunbeam was playing fast and loose with the |
| 8 | rules and with the schedule, which we were not.  We issued |
| 9 | the deposition notices on December 19th.  We issued three |
| 10 | for very specific reasons.  There are three distinct |
| 11 | categories of topics.  The technical issues, marketing |
| 12 | issues, and damages issues.  We issued three topics or |
| 13 | three deposition notices because of the damages model and |
| 14 | the claims that Hamilton Beach is making. |
| 15 | On December 21st, which is exhibit -- Hamilton |
| 16 | Beach sent a letter, it is attached to our brief as |
| 17 | Exhibit D.  In that letter, Mr. Murray, who is one of the |
| 18 | counsel for Hamilton Beach, indicated that they were going |
| 19 | to provide three witnesses on three different days with |
| 20 | respect to each of the notices.  We were told that the |
| 21 | marketing topic, marketing witness was available January |
| 22 | 10th; the damages and financial witness was available |
| 23 | sometime after January 13th; and the technical and patent |
| 24 | issues witness was available January 17th.  At that point, |
| 25 | they had no problem with presenting three witnesses to |

1   testify with resect to these three different notices.

2           Sometime late on January 3rd, we learn that

3   Hamilton Beach has changed course and now they have

4   decided to designate one witness, Mr. Tidey, as the

5   witness for two of the deposition notices.  On January

6   3rd, Hamilton Beach demanded that we prepare and move

7   forward with both the damages and the marketing 30(b)(6)

8   notice on January 10th.  Counsel for Sunbeam was not

9   available on January 10th, as my letter to Mr. Murray

10  explained that next -- I believe it was the next day,

11  attached as Exhibit K.  At that point we proposed, since

12  Mr. Tidey was the witness for both marketing and financial

13  issues, that we depose him on consecutive days.  We

14  proposed January 24th and 25th for Mr. Tidey's

15  convenience.  This was not simply Sunbeam withdrawing a

16  deposition notice and throwing care to the wind.

17          The designation of Mr. Tidey as the single

18  witness for two deposition notices was a change in course.

19  And at that point, Hamilton Beach decided that they would

20  use this change in course in designating one person for

21  two notices as a way to deny Sunbeam the discovery to

22  which it is entitled.  Hamilton Beach has never claimed

23  that the topics in the notices, in any of the notices,

24  were improper or that Sunbeam was not entitled to this

25  discovery.

1    We are particularly concerned with the

2  designation of Mr. Tidey as the marketing and the

3  financial 30(b)(6) witness. He testified at the

4  preliminary injunction hearing that despite his title and

5  despite his tenure with the company, he doesn't know the

6  market that the -- the slow cooker market. He didn't know

7  the product that he was offering at the time in 2004 and

8  2006. And he didn't know the factual basis for the claims

9  for damages and for the preliminary injunction. Now, I'm

10  assuming, as I must, that Mr. Tecce will comply and

11  Mr. Tidey will comply with their 30(b)(6) obligations to

12  educate Mr. Tidey, so I'm assuming that. But we are very

13  concerned that Mr. Tidey now is the witness that will be

14  set forth as the company witness who knows the most about

15  these particular topics.

16    Again, we issued multiple deposition notices

17  because after talking to Mr. Tidey, who was the witness

18  that Hamilton Beach set forth at the preliminary

19  injunction phase of this case, he clearly didn't know.

20  And rather than interview and depose half of Hamilton

21  Beach, we wanted Hamilton Beach to tell us, "You tell us

22  who we should ask. You tell us who we should talk to."

23  That the why we issued these notices.

24    Like I said, Hamilton Beach has never claimed we

25  are not entitled to the discovery. They never claimed we

1    are not entitled to the deposition of three different

2    people, at least as of December 21st.  They have never

3    claimed that this is harassment, and indeed it is not.  We

4    are trying to take discovery.  We are not seeking to

5    extend the discovery limits or take more depositions than

6    what we are entitled to by virtue of these notices.  And

7    they have never claimed that Hamilton Beach as a company

8    is being harassed by this.  Rather, their singular purpose

9    is to protect Mr. Tidey and limit the deposition testimony

10   that he needs to give.

11          Mr. Tecce said in his oral argument that if

12   Sunbeam had wanted an additional three, four, five hours,

13   we could have agreed to that.  We have never heard that.

14   We have only heard "You get seven hours and that's it."

15          Sunbeam is not here asking --

16          THE COURT:  Let me ask you straight up:  Do you

17   think that the deposition of Mr. Tidey relating to the

18   issue of marketing would take the complete seven hours?

19          MS. WARSHAWSKY:  Candidly, Your Honor, I do not

20   believe so.  I don't believe that both depositions taken

21   together will take 14 hours.  And we do not intend to keep

22   him there for 14 hours just for sport.  In fact, many of

23   Sunbeam's depositions have ended well within the

24   seven-hour period.  We are nervous about the seven hours,

25   frankly, because we don't know, Mr. Tidey has already told

| | |
|---|---|
| 1 | us he doesn't know many of the answers to the questions we |
| 2 | would be asking. |
| 3 | THE COURT:  That seems to me another issue.  As |
| 4 | I went through this, the thought that I had was that this |
| 5 | is certainly a waste of energy and time on my part because |
| 6 | you all are talking past each other here.  Hamilton Beach |
| 7 | is saying, you know, "Well, it is one person, seven |
| 8 | hours."  And you are saying you have multiple issues and |
| 9 | you want to make sure you have plenty of time to resolve |
| 10 | those issues.  Now, for me, that's a reasonable and |
| 11 | rational thing.  Because the logic, if they said, "Well, |
| 12 | we will give you one witness for all three areas, so now |
| 13 | you only have seven hours," well, that's not logical. |
| 14 | That doesn't make sense.  Right?  So if we are being |
| 15 | reasonable and being rational, let's try to find out how |
| 16 | much time it is going to take and that's how much time I |
| 17 | will give you. |
| 18 | So in terms of a protective order, they are not |
| 19 | going to get it.  We are going to resolve this like |
| 20 | rational people, reasonable folks, and get that done.  So |
| 21 | we can stop there.  We will put that to the side and |
| 22 | before we leave here we will have that resolved. |
| 23 | MS. WARSHAWSKY:  Okay.  Thank you, Your Honor. |
| 24 | THE COURT:  All right.  Okay, let's hear you on |
| 25 | this last issue. |

```
1              MR. TECCE:  I filed the motion for the
2    protective order, so I accept the responsibility for it.
3    But Your Honor has to understand something.  I have a
4    letter from them saying that they demand that we produce
5    the guy for two hours.  I am already facing one motion to
6    compel because I had not produced documents timely.  I
7    accept responsibility for that.  But I have a job to
8    represent my client.  They tell me they have to have the
9    thing.  What I don't want to be here standing before Your
10   Honor having them accuse me of once again thwarting their
11   discovery efforts.  If they had gone forward on the 10th
12   like they had noticed, this could have all gotten worked
13   out.  Every argument --
14             THE COURT:  We are past that now.  As I said,
15   Mr. Tidey is going to be deposed.  And what I will do is
16   give you all -- give seven hours on one day, 3.5 on the
17   next day.  If that's not enough, you just tell me and
18   explain to me why it is not enough.  If it is enough,
19   which I suspect it will be plenty, end of problem.  So all
20   that is history.
21             MR. TECCE:  Agreed.  Let me talk about the
22   Swanger motion, because this is more important.  I never
23   said that I didn't know what their defenses were.  What I
24   have said was that I am entitled to know the complete and
25   detailed explanation and understanding of what supports
```

1   those defenses.  What Mr. Harris showed Your Honor is
2   troubling to me for two things.  First of all, every one
3   of these affidavits talks about the commercial embodiment
4   that's on sale today and whether it is covered by the
5   claims.  That's not their defense.  Their defense was that
6   there was something on sale more than a year prior to the
7   filing date.  I'm really troubled by the deposition
8   testimony because two days later, Sunbeam was specifically
9   told that this Exhibit 121 was a variation of our product
10  that was launched within the last 90 days.  Their
11  obligation, what they have to show to Your Honor in
12  accordance with Your Honor's order was what was on sale,
13  they contend as early as August of 2004.  What their
14  expert is supposed to do in accordance with Your Honor's
15  order was look at whatever they have and say, "This is the
16  device that was shown to Wal-Mart or K-Mart in August of
17  2004, and this is how that device meets every element of
18  the claim."
19          I'm going to tell you why they didn't do it,
20  Judge.  Our expert will tell you that at least two
21  elements were missing from that device.  It couldn't seal.
22  That's their defense.  Their argument is that this was
23  what was on sale.  They have to prove to this jury beyond
24  a reasonable doubt or by clear and convincing evidence
25  that the device that was on sale on the date that they

```
1    claim it was on sale had every element of the claim and
2    this is why.  They haven't done that.  That's the point.
3    I know what their defense is.  They have stood up here and
4    told Your Honor that we are guilty of inequitable conduct,
5    that we lied and deceived the Patent Office.  Where are
6    the facts in evidence to support it?  They like to make
7    allegations.  My motion is, you make allegations, then you
8    need to comply with the Court's order.  These things, even
9    if these things were relevant, Judge, then this is what
10   should have been in their prior art statement.  It is not
11   just that it was on sale.  It is why it is invalidating.
12   That's the whole point.
13          You know, when Mr. Harris tells you that this
14   was our biggest and most obvious defense, that cuts two
15   ways.  Then it should have been in there.
16          I have made my point.  I'm not going to beat a
17   dead horse on this, Your Honor.  If you want to talk about
18   the last motion, we weren't prepared but I'll talk about
19   it.  The last motion has to do with another, Your Honor's
20   July 1st, 2011 order, requires Sunbeam to provide a list
21   of every element that they contend is missing from the
22   accused device.  The Court has these orders so that the
23   parties know what we are talking about, both respect to
24   validity and with respect to infringement.  The original
25   report that we got from their expert back in July talked
```

1    about this issue about a hook.  He makes a conclusory

2    statement in his report.  It's at Page 19.

3         We get their claim chart and in their claim

4    chart they state "Sunbeam admits that its accused Cook &

5    Carry slow cookers have two over-the-center clips, each of

6    which has a hook."  Now, Judge, the definition of hook

7    that Your Honor ultimately adopted was the one that

8    Sunbeam asked you to adopt.  So they comply with Your

9    Honor's order, they say that "We admit that the device has

10   a hook," they ask for a different definition for hook.

11   Your Honor grants it.  They never come back, they never

12   supplement, they never say anything.  It is not like I had

13   asked for a definition of hook, Your Honor adopted a

14   different definition of hook, obligating them to put them

15   in a position to have to amend their chart in accordance

16   with the Court's order or seek leave or ask me or tell me.

17   They just completely ignore their obligations and they

18   issue a report where the guy comes in and says, directly

19   contrary to what they said in their document in compliance

20   with the Court's order, that the device does not have a

21   hook.  It is that simple.

22        THE COURT:  All right.  Let me have brief

23   response on that.

24        MR. TECCE:  I'm sorry, I do want to make one

25   point because I think it runs both with this one and the

1   other one.  Mr. Harris talked about how my expert in his

2   expert report referenced the ten additional -- talked

3   about the ten additional references.  Judge, I have an

4   obligation, all right, I'm supposed to comply with the

5   Court orders, supposed to do what I am supposed to do,

6   supposed to issue a Rule 26 report.  The fact his expert

7   didn't do it I contend is improper, doesn't let me off the

8   hook.  So my guy is left to guess what the issue is with

9   these ten references and my expert is left to guess about

10  whether they mean there is a hook or not a hook.  That's

11  not what this is all about.  That's not the way the game

12  is supposed to be played.

13          THE COURT:  All right.

14          MR. HARRIS:  Your Honor, on the issue of Dr.

15  Swanger's rebuttal report, the issue is even simpler than

16  Mr. Tecce portrays it.  The fact of the matter is

17  virtually every over-the-center clip ever created has a

18  hook of some sort or another.  That's the way it has been

19  for the last 130 years.  Over-the-center clips have a

20  lever, they have a hook, and hopefully they cooperate

21  either with the edge of a lid of something or with a

22  separate catch.  That's history.  That's what we are

23  living with.

24          Months and months and months before this Court

25  went to the time, trouble, and effort of creating,

1    hammering out its MARKMAN claim construction order, yes,

2    we had an obligation to come in and identify whether the

3    products at issue here have over-the-center clips.  And

4    like I said, all over-the-center clips have levers and

5    hooks.  That's a given.

6         However, in the three or four months, whatever

7    number of months transpired between when we had to come in

8    with a response, either by way of interrogatory or

9    otherwise, as to what the accused products have and don't

10   have, in the interim, this Court ruled on its MARKMAN

11   claim construction.  And it didn't just say a hook, any

12   hook, pick one.  This Court specifically looked at the

13   prosecution history and required that the hook have

14   elements that lie, I want to make sure I characterize this

15   accurately, elements that lie at least partially in each

16   of the horizontal and vertical planes.

17        Now, when the Court saw the Sunbeam product, the

18   accused product at the preliminary injunction hearing as

19   it will again, its metal fastener portion, the portion

20   that extends from the lever and cooperates with the latch,

21   has a little bend at the top.  It does not have an element

22   that lies at least partially in a vertical plane and an

23   element that lies at least partially in a horizontal

24   plane.  It simply doesn't have it.

25        Having the benefit of this Court's claim

1   construction, Dr. Swanger hammered out his rebuttal report
2   to say specifically that in light of what this Court has
3   ruled a hook must have to qualify as a hook in this case,
4   we don't have that hook.  And Mr. Tecce is angry about
5   that.  Because months before, regardless of whose
6   contention it was that the hook lie in one plane versus
7   the other plane, that it be a vertical plane versus the
8   horizontal plane, the fact of the matter is, months
9   earlier, when it is just a hook, like I said, every
10  over-the-center clip has a hook.  But now that the Court
11  gave us guidance, as is required under MARKMAN, and told
12  us what the hook must have, all Dr. Swanger came back with
13  is said, "Yeah, we've got a hook but it is not that one.
14  Our hook doesn't look anything like it.  It doesn't
15  operate like that at all.  That's not the hook."
16  Mr. Tecce is angry and wants to strike that portion
17  because months earlier, ever before this Court addressed
18  claim construction, he had the general semblance that
19  there is a hook on an over-the-center clip.  That's what
20  the issue is about.  It is simple, straightforward.  We
21  are relying on the Court's claim construction decision,
22  just as we should.  Thank you, Your Honor.
23          THE COURT:  All right, thank you.  I'll let you
24  have the last word.
25          MR. TECCE:  I'll be brief, Your Honor.  You have

```
 1    two things, Judge.  Control and you have credibility.  If
 2    Your Honor looks at Exhibit Number 1, their expert report
 3    served on us in July of 2011, their expert states in July,
 4    "Accordingly, my opinion is that in the -- in this
 5    context, a hook is the portion of the clip that
 6    simultaneously extends or lies at least partially in both
 7    the vertical and horizontal planes when in the closed or
 8    locked position."  That is their expert report served on
 9    us in July.  They have known that this was the issue.
10    They asked Your Honor to construe the claim just like
11    that.  And knowing that, they serve us with -- their
12    compliance with the Court's order says, "We have a hook."
13    I have every right to believe they have walked away from
14    this.  Judge, I'm not angry.  Your Honor strikes me as
15    kind of a by-the-numbers, by-the-book guy.  I'm trying to
16    get these guys to follow the rules Your Honor set.  When I
17    didn't follow them, I got compelled.  I get it.  But I
18    have every right to have Sunbeam play by the same rules.
19    Thank you.
20              THE COURT:  All right.
21              MR. HARRIS:  May I have one quick second?
22              THE COURT:  Go ahead.
23              MR. HARRIS:  The fact of the matter is, at the
24    time that Dr. Swanger initially said, "Yeah, there is a
25    hook," it is because the claims that were being asserted
```

1    don't have that limitation in it.  They simply don't say

2    that.  Are we supposed to assume that whatever Dr. Swanger

3    said back in July, that's the way and the only way the

4    claim can be interpreted?  As written the claim says

5    you've got to have a hook.  Yes, it's got a hook.  But we

6    waited for this Court's order on MARKMAN claim

7    construction before going back and taking a look as to

8    whether that Sunbeam accused product has what this Court

9    has determined the hook must be, and that's the proper way

10   to do it.  Thank you, Your Honor.

11            MR. TEECE:  Judge, it is not proper to ask Your

12   Honor to do something and then spring it on me when I get

13   their report at the end of discovery.  That's not proper.

14            THE COURT:  All right.  This is why I love

15   patent cases.  What I will do is give your bottom line

16   tomorrow, send out an order explaining a ruling, maybe not

17   an explanation, but you will know swiftly how we stand.

18   Thank you very much.  Appreciate it.

19            MR. HARRIS:  Your Honor, I'm sorry, something

20   just occurred to me.  Before we adjourn, can I bring up

21   one issue that's very, very important?

22            THE COURT:  Sure.

23            MR. HARRIS:  Not that any other issues aren't.

24   But every once in a while the parties actually get along

25   and talk to each other.  Incredible as that is, being a

1    patent case and all.  There's some issues with regard to

2    the Court's current case management order that I wanted to

3    address after having spoken to Mr. Tecce and frankly,

4    having reached agreement on three issues.  And we are not

5    assuming anything, we want to make sure that we have the

6    Court's approval of these.

7              THE COURT:  Okay.

8              MR. HARRIS:  Of these recommendations.  Number

9    one, as things stand right now, the summary judgment

10   motions, the dispositive motions are due, I believe, on

11   February 15th.  That's a Wednesday.  The parties jointly

12   are asking the Court if we can switch that day from the

13   15th to the 17th simply to get the benefit of Friday.  We

14   would not be changing the response to the reply dates.

15             THE COURT:  That's fine.

16             MR. HARRIS:  That's Item Number one.  Number

17   two, the parties have talked to each other with regard to

18   the length of the briefs.  And both parties are familiar

19   with the rules as to what the lengths of the briefs are.

20   This Court is the one who has to read those briefs, so we

21   thought it might be a good idea that while we are talking

22   about enlarging a petition -- a petition to enlarge the

23   length, that we pass it by the Court.  The parties have

24   talked and are requesting the opportunity to have the

25   motions at a max of 45 pages, the responses at a max of 45

1   pages, and the replies at a masimum of 30 pages with the

2   Court's permission.

3          THE COURT:  Sure.  I'm not thrilled about it,

4   but I'll agree to it.  We will work with it.

5          MR. HARRIS:  Okay.  Lastly, Your Honor, as

6   things stand right now, discovery is set to close on

7   February 14th.  The parties again have conferred and have

8   agreed that with the Court's permission, they would like

9   the opportunity to hold off on completing, and this only

10  applies to expert witnesses because there are several of

11  them and the Court, for example, got a motion to strike

12  one of those experts yesterday.  We have a patent law

13  expert that's emerged in this case, and we have an

14  opposition to it.  But it is not fully briefed yet.  But

15  the parties in the interim have talked and have agreed to

16  defer the expert witness and only the expert witness

17  depositions until after the 14th up to the opposition due

18  date, which I believe is fourteen days now from the 17th,

19  which I believe takes you to March 2nd or 3rd or something

20  like that.  We would like the opportunity to defer the

21  expert witnesses, and to the extent that they may be

22  needed to enable responses in opposition to those

23  dispositive motions, great, fine.  But the parties have

24  worked diligently to make sure that those witnesses are

25  made available during that period.  It gives us time to

```
 1    focus on the responses, et cetera, and only go after the
 2    experts to the extent needed.
 3              THE COURT:  Sure, that's fine.  No problem.
 4    I'll do that.
 5              MR. HARRIS:  Would the Court prefer that we
 6    actually come in with Declarations of the experts for the
 7    moving -- for the dispositive motions, or would the Court
 8    permit reference to their expert reports in lieu of the
 9    Declaration?  How would the Court prefer to see it?
10              THE COURT:  You can refer to the expert reports
11    if you like.  That's fine with me.  As I say, I've seen it
12    both ways.  I've got both kinds of information.
13              MR. TECCE:  Can we just file an affidavit from
14    the expert that says my opinions are in my report?
15              THE COURT:  That's okay with me.
16              MR. HARRIS:  We really appreciate it.
17              THE COURT:  Thank you.
18              (Proceedings adjourned at 9:53 a.m.)
19                    CERTIFICATE OF REPORTER
20         I, Jeffrey B. Kull, Official Reporter, certify that
21    the foregoing is a correct transcript from the record of
22    proceedings in the above-entitled matter.
23
24
25    _____/s/_____
```

1  Jeffrey B. Kull,
   Official Federal Reporter

2

3  _____/s/_____

4  Date

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25