UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

HAMILTON BEACH BRANDS, INC.,

Plaintiff,

v.

SUNBEAM PRODUCTS, INC.,
d/b/a JARDEN CONSUMER SOLUTIONS,

Defendant.

Action No. 3:11-CV-345

**[REDACTED VERSION]**

## MEMORANDUM OPINION

THIS MATTER is before the Court on cross motions for summary judgment. For the reasons that follow, the Court will GRANT Sunbeam Products, Inc.'s Motion (Doc. No. 121), and DENY Hamilton Beach Brands, Inc.'s Motion (Doc. No. 115).

### I.  BACKGROUND

This patent infringement action concerns slow cookers. Plaintiff Hamilton Beach Brands, Inc. ("Hamilton Beach") claims that Sunbeam Products, Inc.'s ("Sunbeam") Cook & Carry slow cooker device infringes claims 1 and 3–7 of U.S. Patent No. 7,947,928 ("'928 patent").

The '928 patent, filed June 4, 2010 and issued May 24, 2011, is a continuation of U.S. Patent Application No. 12/255,188 ("'188 application"), filed October 21, 2008 and currently pending before the United States Patent and Trademark Office ("PTO"). The '188 application, in turn, is a continuation of U.S. Patent Application No. 11/365,222, filed March 1, 2006 and issued February 3, 2009 as U.S. Patent No. 7,485,831 ("'831 patent"). Following

1

the chain of continuation applications, the '928 patent claims priority back to the filing date of the '831 patent.

Hamilton Beach and Sunbeam compete directly in the small kitchen appliance industry, particularly with respect to slow cookers. The commercial embodiment of the '928 patent, launched in 2005, is Hamilton Beach's Stay or Go slow cooker. The Stay or Go features a clip that seals the lid of the slow cooker to the container, thereby preventing undesirable movement of the lid and spillage of foodstuffs from the container. Sunbeam, which manufactures and sells slow cookers under the Crock-Pot trademark, began selling a "Crock-Pot Cook & Carry" line of slow cookers after the '831 patent issued in 2010. As the names "Stay or Go" and "Cook & Carry" suggest, both slow cookers are designed with portability in mind. Hamilton Beach claims that Sunbeam copied the Stay or Go, and that it drafted the claims of the '928 patent, prosecuted under the PTO's "Accelerated Examination" procedure, in an effort to cover the configuration of Sunbeam's Cook & Carry. Hamilton Beach filed its Complaint for patent infringement in this Court the very same day the '928 patent issued—May 24, 2011—and moved for a preliminary injunction only two days later.

After briefing and argument from the parties, the Court denied Hamilton Beach's motion for a preliminary injunction on August 15, 2011. (Doc. No. 58.) On December 20, 2011, again after briefing and argument from the parties, the Court issued its Claim Construction Order pursuant to *Markman v. Westview Instruments*, 52 F.3d 967 (Fed. Cir. 1995). Two of the Court's claim constructions—that of the claim terms "hook" and "container rim" (both present in all of the asserted claims)—are critical here. The Court construed "hook" as "the portion of the clip that simultaneously extends or lies, at least

2

partially, in both the vertical and horizontal planes when in the closed or locked position." (Claim Construction Order, Doc. No. 79, at 2.) The Court construed "container rim" as "the upper portion of the container that includes the ledge adjacent to the container opening." (*Id.*)

Those constructions are critical to the two noninfringement arguments that Sunbeam now advances on summary judgment: that its accused Cook & Carry device does not meet (1) the "hook" limitation present in all of the asserted claims; and (2) the "hook . . . shaped to extend from the lever and around the container rim" limitation present in claims 3, 4, and 7.

The parties' summary judgment motions present a number of issues. The first category of issues relates to infringement, and specifically the question of whether Sunbeam's Cook & Carry infringes the two limitations above either literally or under the doctrine of equivalents. The remaining issues relate to invalidity. Sunbeam asserts that the '928 patent is invalid because Hamilton Beach: (1) cannot claim priority to the '831 patent as it introduced "new matter" into the '928 specification, which would render the '928 patent's claims anticipated under 35 U.S.C. § 102(a) and (b); (2) offered for sale and (3) publicly used the Stay or Go slow cooker more than one year prior to the '831 application date, which would render the '928 patent claims invalid even if the '928 patent can claim priority to the '831 application. Finally, Sunbeam asserts that the '928 patent is invalid as obvious.

The Court takes those issues up below in turn.

3

## II.    LEGAL STANDARD

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, if the nonmoving party's evidence is only colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

In considering whether summary judgment is proper, the Court must look to whether a rational trier of fact, viewing the record in its totality, could find for the nonmoving party. *See Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citing *Anderson*, 477 U.S. at 248–49). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing [the] motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)) (internal quotation marks omitted).

When considering cross motions for summary judgment, the Court must apply the same standard outlined above, and cannot resolve genuine issues of material fact. *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999). The Court should "consider and rule upon each party's motion separately and

4

determine whether summary judgment is appropriate as to each under the Rule 56 standard." *Id.*

### III.    ANALYSIS

#### A.  Infringement

To prove infringement, a patent holder must demonstrate that "each and every limitation set forth in a claim appear[s] in an accused product." *See V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). "Summary judgment on the issue of infringement is proper 'when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.'" *Fellowes, Inc. v. Michilin Prosperity Co.*, 491 F. Supp. 2d 571, 585 (E.D. Va. 2007) (quoting *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005)).

##### 1.    Literal infringement

###### a.  The "hook" limitation (all asserted claims)

The Court construed the term "hook" present in all of the asserted claims as "the portion of the clip that simultaneously extends or lies, at least partially, in both the vertical and horizontal planes when in the closed or locked position." (Claim Construction Order, Doc. No. 79, at 2.)

Relying on the opinion of its expert, Dr. Lee Swanger, Sunbeam argues it cannot literally meet this limitation because the Cook & Carry's latching mechanism, when in the locked position, does not extend in *both* the vertical and horizontal planes. Rather, Sunbeam argues that while one portion of its latching mechanism lies in "close to [a] vertical" plane, "the second portion lies at a 45-degree angle—i.e., not even partially in the

horizontal plane." (Def.'s Mem. Supp. Mot. Summ. J. 11 (emphasis omitted).) To illustrate

this idea, Sunbeam supplies a figure that superimposes lines intersecting at a 90 degree

angle over a photograph of the Cook & Carry, where the horizontal line intersects the

vertical line at the bend in the wire portion of its latching mechanism:



(*Id.* at 11.)

Hamilton Beach first responds that Dr. Swanger's opinion with respect to the hook

limitation is a "sham" proffered solely for the purpose of surviving summary judgment.

Citing Swanger's testimony from the preliminary injunction hearing, Hamilton Beach

asserts that Swanger admitted that the Cook & Carry includes the "hook" claimed in the

'928 patent.

Hamilton Beach next addresses the substance of the "hook" limitation. Hamilton

Beach agrees that when engaged, the Cook & Carry's latching mechanism lies in a vertical

plane below the bend in the wire. But Hamilton Beach contends, "Above the bend, the wire

form proceeds at an angle with respect to the lower portion so as to at least partially lie in

both the horizontal and vertical planes." (Pl.'s Mem. Supp. Mot. Summ. J. 17.) Thus,

Hamilton Beach argues that the shape of the wire form in the Cook & Carry is similar, before and after the bend, to the wire form shown in figure 2 of the '928 Patent:



*Fig. 2*

'928 Patent fig.2.

Swanger's analysis, Hamilton Beach argues, amounts to nothing more than strategically placing a horizontal superimposed line in an effort to avoid literal infringement. In Hamilton Beach's view, Swanger carefully positioned his horizontal line so that no part of the Cook & Carry wire form lies within that horizontal line, and hence within the horizontal plane, when a horizontal line just as easily could have been drawn in a higher location that would demonstrate infringement under Swanger's "superimposed line" methodology. To illustrate this idea, Hamilton Beach superimposes its own dotted line—parallel to and above Sunbeam's—so the wire form of Sunbeam's Cook & Carry intersects its horizontal line:

7



(Pl.'s Mem. Supp. Mot. Summ. J. 19.)

As Hamilton Beach would have it, Swanger's analysis is incorrect in light of the Court's claim construction of "hook" and the intrinsic record: applying Swanger's superimposed line methodology to figure 2 of the '928 Patent, Hamilton Beach argues that the top portion of the wire form disclosed in the '928 patent, in the closed or locked position (23), would be positioned above a superimposed horizontal line placed in the same effective position as Swanger's superimposed horizontal line, and thus not within the "horizontal plane":



Fig. 2 of the '928 Patent

(*Id.* at 20.) Hamilton Beach argues this analysis is improper for two reasons. First, Hamilton Beach argues that it "essentially creates an addendum to the Court's claim construction of 'hook' by requiring the placement of horizontal and vertical lines in a specific location relative to the hook." (*Id.*) Second, Hamilton Beach argues Swanger's methodology would read the preferred embodiment shown in figure 2 out of the claims, which is "rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). For all of these reasons, Hamilton Beach argues it is entitled to a finding of literal infringement on the "hook" limitation.

The Court finds that Sunbeam has the better part of this argument. As an initial matter, Hamilton Beach's insistence that Swanger admitted under oath that the Cook & Carry contains the "hook" claimed in the '928 patent simply is not true. Swanger never testified to that effect; to the contrary, his statements merely reflect the fact that the Cook & Carry has *a* hook. In no way did Swanger state that the Cook & Carry contains *the* hook claimed in the '928 patent. To paint Swanger's words otherwise distorts his testimony.

More important, Hamilton Beach fails to explain why Swanger's opinion regarding the hook limitation is improper or why it fails to properly take into account the Court's construction of the term "hook." In the Court's view, no reasonable juror could find that the wire form of the clip on Sunbeam's Cook & Carry slow cooker "simultaneously extends or lies, at least partially, in both the vertical and horizontal planes when in the closed or locked position."

The following statement from Hamilton Beach's expert, Dr. Edward Caulfield, is representative of Hamilton Beach's argument with respect to literal infringement of the "hook" limitation: "As shown in Figure 13, all portions (both before and after the bend) of

9

the hook lie at least partially in both the vertical and horizontal planes in the closed

position." (Caulfield Decl. Ex. A ¶ 44.) This statement does little more than parrot the claim

language, but worse for Hamilton Beach, Caulfield's own figure 13 seems, if anything, to

support Sunbeam's position.



(Id.) The dotted line on Dr. Caulfield's own Figure 13 fails to highlight that all portions of

the wire form on Sunbeam's Cook & Carry "lie at least partially in both the vertical and

horizontal planes in the closed position." Rather, it seems to highlight that the wire form as

a whole lies in a vertical position.

The parties' superimposed lines, however, are unnecessary to the ultimate analysis.

Looking carefully at the wire form on the Cook & Carry in the closed position, it is clear that

the bottom portion of the wire form lies in a vertical plane. The top portion of the wire

form, however, does not lie in a horizontal plane; it lies in a plane that is neither vertical

nor horizontal. Indeed, to the naked eye the top portion of the wire form seems to lie in a

plane extending at an angle of approximately 45 degrees. Hamilton Beach argues this

position has no evidentiary support, and further, that it actually demonstrates literal infringement, "because the second portion of the wire form is extending partially in *both planes*, since both the horizontal and vertical components of the wire form change from one point to the next." (Pl.'s Reply 6.) But further evidence is unnecessary to demonstrate what a reasonable juror can plainly see, and adopting Hamilton Beach's position would mean that any wire form having a bend, however slight, would simultaneously extend in both vertical and horizontal planes—a position that defies a common-sense application of the terms "vertical" and "horizontal." The Court finds that while a reasonable juror should find that the bottom portion of the Cook & Carry wire form extends in a vertical plane when in the closed or locked position, no reasonable juror could find that the top portion simultaneously extends in a "horizontal" plane when in the closed or locked position. Accordingly, the Court grants Sunbeam summary judgment of noninfringement with respect to literal infringement of the "hook" limitation present in all of the asserted claims.

### b. The "hook ... shaped to extend from the lever and around the container rim" limitation (claims 3, 4, 7)

Present in claims 3, 4, and 7 of the '928 patent is the limitation "hook ... shaped to extend from the lever and around the container rim."[1] The Court construed the term "container rim" present in those claims as "the upper portion of the container that includes the ledge adjacent to the container opening." (Claim Construction Order, Doc. No. 79, at 2.)

---

[1] With respect to claims 3 and 4 (claim 4 depending on claim 3), the ellipsis denotes omission of the single word "being," i.e., "hook *being* shaped to extend from the lever and around the container rim." '928 Patent col.9 ll.14–15 (emphasis added). With respect to claim 7, the ellipsis denotes omission of a larger phrase (again, set off in italics): "hook *of each over-the-center clip is* shaped to extend from the lever and around the container rim." '928 Patent col.10 ll.35–37 (emphasis added).

Sunbeam argues that the wire element[2] of its Cook & Carry simply does not extend "around the container rim," but instead stops well short of the ledge adjacent to the container opening. To illustrate this argument, Sunbeam supplies the following image of its Cook & Carry slow cooker in its brief:



(Def.'s Mem. Supp. Mot. Summ. J. 12.)

Hamilton Beach responds that Sunbeam's argument is based on an interpretation of the term "around" that is unsupported by any authority or by the intrinsic record. According to Hamilton Beach, Dr. Swanger contends that the plain and ordinary meaning of "around" supports the position that the wire portion of the latching mechanism of Sunbeam's Cook & Carry must traverse the entire width of the container rim in order to extend "around" the container rim. Hamilton Beach argues, however, that Swanger is unable to recite the basis for this "plain and ordinary" definition of "around," and fails to

---

[2] Sunbeam uses this terminology in its argument instead of "hook" because it contends that its Cook & Carry product does not possess a "hook" as the Court construed the term.

cite to any evidence in the intrinsic record, and particularly the specification, that requires that "around" means "all the way around." (Pl.'s Mem. Supp. Mot. Summ. J. 21.)

Hamilton Beach states that if Sunbeam wanted an interpretation of the word "around" to require that it means "completely around" as Swanger implicitly contends, Sunbeam should have raised that issue during claim construction. In any event, Hamilton Beach claims that Swanger's position cannot be gleaned from the drawings in the '928 specification, because one cannot discern that the hook, when in the engaged position, traverses the entire width of the container rim. In sum, Hamilton Beach argues that Sunbeam, through Swanger, is simply attempting to import a fictitious limitation into claims 3, 4, and 7.

Hamilton Beach argues that Dr. Caulfield, "[i]n contrast . . . has affirmatively shown that the hook of the Cook & Carry slow cooker is literally shaped to extend from the lever, mounted to the lid, and around the container rim to the catch, which is mounted on the side wall of the slow cooker housing." (Pl.'s Mem. Supp. Mot. Summ. J. 22.) Caulfield explains that such a shape is necessary on Sunbeam's Cook & Carry cooker

> because the container rim lies directly between the catch on the side wall and the connection point of the hook to the lever. A "straight" hook could not be used because the container rim would interfere with and prevent the hook from engaging the catch. It is therefore necessary that the hook be shaped to bypass or avoid the container rim, which is accomplished by shaping the hook to extend around the container rim.

(*Id.*) Hamilton Beach therefore submits that no reasonable juror could find that the Cook & Carry does not literally infringe claims 3, 4, and 7.

The Court finds that Sunbeam's argument that the wire element of its Cook & Carry cannot literally infringe the "hook . . . shaped to extend from the lever and around the container rim" limitation because its wire element stops well short of the ledge adjacent to

13

the container opening is supported by the plain and ordinary meaning of the term "around." While Hamilton Beach complains Sunbeam is asking the Court to revisit claim construction, in fact it is Hamilton Beach that is asking the Court to do so: at the claim construction stage of this case, Hamilton Beach never asked the Court to construe the term "hook" in isolation, but instead asked that the Court construe the entire phrase "hook being shaped to extend from the lever and around the container rim" as "the hook simultaneously lies, at least partially, in a first plane defined by the lid and a second plane defined by the side wall of the housing." (Pl.'s Cl. Constr. St., Doc. No. 66, at 1–2.) Such a construction would have had the practical effect of discarding the claim language "around the container rim." Further, Sunbeam is right to point out that Caulfield's ultimate opinion on this issue, stripped to its core, is that the wire element of the Cook & Carry latching mechanism infringes claims 3, 4, and 7 because of its *shape*—that it is not a "straight hook." This argument ignores the simple, plausible, and inescapable contention that the wire element of the Cook & Carry cannot extend "around" the container rim as it does not even come close to the inner edge of the container rim. For all of these reasons, the Court finds that no reasonable juror could find that Sunbeam's Cook & Carry slow cooker meets the "hook . . . shaped to extend from the lever and around the container rim" limitation present in claims 3, 4, and 7. Accordingly, the Court grants Sunbeam summary judgment of noninfringement with respect to literal infringement of the "hook . . . shaped to extend from the lever and around the container rim" limitation present in claims 3, 4, and 7.

### 2.    Infringement under the doctrine of equivalents

A patent holder may show infringement under the doctrine of equivalents: (1) if the differences between an element of the accused device and the claim limitation are

14

insubstantial; or (2) using the "function-way-result" test. *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). Infringement under the doctrine of equivalents, as with literal infringement, is a question of fact. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). However, summary judgment may be granted on a claim of infringement under the doctrine of equivalents "where the evidence is such that no reasonable jury could determine two elements to be equivalent." *Id.* (quoting *Warner-Jenkinson*, 520 U.S. at 39 n.8).

Hamilton Beach argues that even if a reasonable fact finder could find no literal infringement with respect to the "hook" limitation present in all of the claims, the Cook & Carry nevertheless has an element that is equivalent to the "hook" claimed in the '928 patent. "Specifically, the function of the hook in the '928 patent is to join the lever portion of the clip mounted in a first orientation to the catch portion of the clip, which is mounted in a second orientation." (Pl.'s Mem. Supp. Mot. Summ. J. 17–18.) The '928 Patent accomplishes this function by putting a bend in a portion of the clip, which allows the clip to lie in multiple planes. The result is that the lid can be joined in sealing engagement with the container. "The wire form in the Cook & Carry slow cooker performs in substantially the same way, since the lever and catch are mounted in differing orientations, and the wire form (with a bend) serves to simultaneously join these two clip portions, thereby sealing the lid." (*Id.* at 18.)

Hamilton Beach further argues that even if Sunbeam's Cook & Carry does not literally infringe the "hook . . . shaped to extend from the lever and around the container rim" limitation, the Cook & Carry nevertheless infringes this limitation under the doctrine of equivalents because it has a latching mechanism that is equivalent to a hook "shaped to

extend from the lever and around the container rim." Dr. Caulfield opines that the function of the hook in the '928 Patent is to "'extend[ ] from the lever to the catch to couple the lid with the housing,' that this function is accomplished by 'providing a hook with a shape that extends in multiple planes,' and that the result is 'a hook with the ability to engage with the catch.'" (*Id.* at 23 (quoting Caulfield Decl. Ex. A. ¶ 59).) Caulfield clarifies that, though the hook of the Cook & Carry is not long enough to span the entire container rim disclosed in the '928 Patent, this is an insubstantial difference given the hook's intended use. In Caulfield's opinion, then, the Cook & Carry meets all of the elements of the function-way-result test.

Sunbeam responds that prosecution history estoppel forecloses Hamilton Beach's claim that Sunbeam's Cook & Carry infringes under the doctrine of equivalents. With respect to the "hook" limitation, Sunbeam argues that Hamilton Beach specifically limited its claims to a particular type of over-the-center clip—one with a hook that "must . . . simultaneously extend or lie, at least partially, in both planes (i.e., vertical and horizontal) in the closed or locked position" (Def.'s Mem. Supp. Mot. Summ. J. Ex. 49, at 15–16)—in response to PTO obviousness rejections. Sunbeam further argues that Hamilton Beach narrowed the equivalents it can rely on with respect to the "around the container rim" claim language, as it specifically distinguished the '928 patent's hook from prior art references that did not have hooks that went around their "rim." Hamilton Beach stated, for example, in a Reply to a PTO Office Action, "If the hook of the over-the-center clip of amended claim 3 is *not* structurally configured to extend *around* the container rim and simultaneously span or extend in these two planes in the closed or locked position, the lid will *not* be retained in sealing engagement on the container rim." (*Id.* at 16.) Sunbeam

16

points out that Hamilton Beach itself emphasized the language in the preceding quote, and argues Hamilton Beach "clearly and unmistakably surrendered claim scope covering hooks that do not simultaneously extend or lie in both the horizontal and vertical planes." (Def.'s Mem. Supp. Mot. Summ. J. 13.) In Sunbeam's view, the Court cannot find Sunbeam infringes under the doctrine of equivalents because such a finding would allow Hamilton Beach to recapture through the doctrine of equivalents claim scope it unmistakably surrendered in order to obtain a patent.

With respect to the "hook" limitation, Sunbeam also focuses on the idea that the Cook & Carry's latching mechanism performs the function of sealing the lid against the vessel in a substantially different way because the '928 patent's claimed "hook" results in a significantly greater horizontal force component, and thus a greater total force, than the Sunbeam design.

The Court finds that further factual development is necessary with respect to these issues, and accordingly, that summary judgment is improper.

### B.  Invalidity

#### 1.    New Matter

The patent system's prohibition on new matter, enumerated in the statement, "No amendment shall introduce new matter into the disclosure of the invention," 35 U.S.C. § 132(a), is enforced through the written description requirement of 35 U.S.C. § 112, ¶ 1. *See, e.g., Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1378–79 (Fed. Cir. 2008). Thus, the issue presented by a new matter defense is "whether the specification of the original application contained a written description of the invention sufficient to allow persons of ordinary skill in the art to recognize that the

17

inventor invented the subject matter that is claimed in the asserted claims." *Id.* at 1379

(citing *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 993 (Fed. Cir. 1999)). In

this case, the relevant original application is the '831 application, because Hamilton Beach

claims priority, *see* 35 U.S.C. § 120, to the date of that application's filing. Therefore, "the

disclosure of the earlier filed ['831] application must describe the later . . . invention

[claimed in the '928 patent] 'in sufficient detail that one skilled in the art can clearly

conclude that the inventor invented the claimed invention as of the filing date sought.'"

*Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1331 (Fed. Cir. 2008) (quoting

*Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)).

Two burdens of proof are at play with respect to this new matter issue. As neither

the PTO nor the Board of Patent Appeals made a priority determination, it is Hamilton

Beach's burden to establish *priority* to the filing date of the '831 application. *See*

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304–05 (Fed. Cir. 2008). Patents,

however, are presumed valid. 35 U.S.C. § 282. It is therefore Sunbeam's burden to prove

*invalidity* by clear and convincing evidence. *PowerOasis*, 522 F.3d at 1305. Should Sunbeam

meet its burden of establishing a *prima facie* case of invalidity, Hamilton Beach "is then

obligated to come forward with evidence to the contrary." *Id.* (quoting *Ralston Purina Co. v.*

*Far-Mar-Co, Inc.*, 772 F.2d 1570, 1573 (Fed. Cir. 1985)) (internal quotation marks omitted).

Sunbeam's new matter argument is straightforward: Sunbeam states that Hamilton

Beach filed the '928 application as a continuation application, expressly for the purpose of

writing claims to cover Sunbeam's Cook & Carry. But Hamilton Beach had a problem:

Sunbeam's Cook & Carry had the reverse of the configuration Hamilton Beach disclosed

and claimed in its earlier patent applications.

Sunbeam argues the '831 patent disclosed a slow cooker having a latching mechanism where the hook and lever are mounted on the sidewall, and a "catch" is mounted on the lid. The '831 patent defined the term "clip" as "a generally conventional over-the-center clip having a hook 22*a* and a lever 22*b*." '831 Patent col.5 ll.17–18. This definition excluded the "catch," and was appropriate given the fact that the slow cooker disclosed in the '831 patent only had clips mounted to the housing's side wall. Indeed, according to Sunbeam, nothing in the prosecution history of the '831 patent disclosed or even suggested over-the-center clips on the *lid* of the slow cooker.

Since the '831 patent did not disclose "clips" mounted on the lid—which was Sunbeam's reverse configuration—the '928 patent specification broadened the definition of "clip" to specifically include the "catch" so as to provide written description support for the claims written to cover Sunbeam's Cook & Carry.[3] Hamilton Beach broadened the definition of "clip" using language phrased in the alternative, so as to attempt to cover not only a slow cooker with a catch mounted on the lid, but also a cooker with a catch mounted on the side wall: "The slow cooker further includes at least one clip mounted between the lid and the side wall of the housing, the at least one clip being an over-the-center clip having a hook and a catch, one of the hook and catch being mounted on one of the lid and side wall of the housing and the other of the hook and catch being mounted on the other of the lid and side wall of the housing." '928 Patent col.1 l.66–col.2 l.5.

Relying on Swanger's invalidity report, Sunbeam argues: "The definition of 'clip' in Plaintiff's earlier patent applications, which excluded the catch, would not have provided

---

[3] In support of this proposition, Sunbeam cites to a "redline" comparison showing the precise differences in the language of the "Brief Summary of the Invention" sections of the '831 and '928 patent specifications. (*See* Def.'s Mem. Supp. Mot. Summ. J. Ex. 5.)

written description support for these broader claims, in violation of 35 U.S.C. § 112, ¶ 1."
(Def.'s Mem. Supp. Mot. Summ. J. 17.) Therefore, Sunbeam contends Hamilton Beach is not
entitled to the priority date of the '831 application. Without the benefit of the priority filing
date of the '831 application, Sunbeam argues Hamilton Beach's own Stay or Go cooker,
which has been on the market since as early as 2005, as well as Sunbeam's Cook & Carry
slow cookers, which were known and used by others in the United States beginning in
2009, anticipate the asserted claims under 35 U.S.C. § 102(a) and (b).

   Hamilton Beach responds that Sunbeam cannot rely on the "flawed" legal opinions
of its technical expert regarding changed definitions of the term "clip." Dr. Swanger is
unqualified to engage in such an analysis and it cannot form the basis for summary
judgment in Sunbeam's favor. Hamilton Beach's technical expert, on the other hand,
"reviewed the applications and determined that one of ordinary skill in the art would
understand from the originally-filed disclosure that the invention of the '928 patent claims
was supported by and described in the originally-filed application." (Pl.'s Mem. Opp. Def.'s
Mot. Summ. J. 14.)

   Hamilton Beach contends it is not disputed that in the third and fourth quarters of
2008, after struggling to complete a feasible "knock-off" of Hamilton Beach's slow cooker,
Sunbeam "made an insignificant and unsubstantial change" in the design of its cooker, by
inverting the mounting configuration of the lever, hook, and latch components. After this
inverted product came on the market, Hamilton Beach then filed a continuation application,
as the law allows, making "no substantive changes" to the disclosure.[4] Though both of the

---

[4] For this proposition, Hamilton Beach relies on its own "redline" comparison of the '831
and '928 patents. (*See* Pl.'s Mem. Opp. Def.'s Mot. Summ. J. Ex. Z.) The "Brief Summary of the
Invention" section of the comparison, of course, reveals the changes highlighted by

patent applications described a particular embodiment in which the lever and hook are mounted to the side wall and the catch is mounted to the lid, *both* confirm that this configuration is only *preferred*, not required. Sunbeam's alternative configuration logically flows from both of the descriptions in the patents, which were not changed. "Thus, even following Dr. Swanger's flawed reasoning that the clip only includes a lever and a hook, the original disclosure explicitly supports mounting of the lever and hook on the lid of the slow cooker. This is wholly consistent with the testimony of Sunbeam's outside designer." (*Id.* at 16.) Hamilton Beach states that Sunbeam's new matter argument is "nothing more than a 'Rube Goldberg' effort to limit the patent to a single embodiment [where] the hook and lever components [are] mounted on the side wall of the slow cooker housing and the catch [is] mounted on the lid." (*Id.*) Hamilton Beach argues that as there are no "words or expressions of manifest exclusion or restriction," *Martek Biosciences Corp. v. Nutrivona, Inc.*, 579 F.3d 1363, 1381 (Fed. Cir. 2009), in the disclosure, and by Swanger's admission, no express definition of the term "clip" in the '831 patent that affirmatively excludes the catch, there is no evidence of intent to limit the invention disclosed in the '831 patent to one particular mounting configuration.

Hamilton Beach posits two additional contentions. First, Hamilton Beach asserts that the '831 patent never defined the term "clip" at all; therefore, Sunbeam's argument that the meaning of the term "clip" changed is wrong because the term was not limited to any particular definition in the '831 disclosure. Second, even if the term "clip" was defined

---

Sunbeam. Presumably Hamilton Beach relies on the "Detailed Description of the Invention" section of specification comparison, which indeed appears to contain no substantive changes.

in the '831 patent and that definition changed, that change would only be a clarification to the '831 disclosure, and therefore not impermissible new matter.

Hamilton Beach's arguments are unpersuasive. As the '928 patent claims a slow cooker with "an over-the-center clip having a hook and a catch," where "one of the hook and catch [is] mounted on one of the lid and side wall of the housing and the other of the hook and catch [is] mounted on the other of the lid and side wall of the housing,"[5] it follows that the new matter issue in this case boils down to two fundamental questions: (1) Did the '831 patent disclose "clips" that included a catch? And (2) did the '831 patent disclose a configuration where a catch could be mounted on the side wall of the housing? As the answer to both of these questions is "No" it likewise follows that the '831 patent does not "contain[ ] a written description of the invention sufficient to allow persons of ordinary skill in the art to recognize that the inventor invented the subject matter that is claimed in the asserted claims," *Commonwealth Scientific*, 542 F.3d at 1379, of the '928 patent.

To begin, it is abundantly clear that the text of the '831 specification discloses "clips" that have a hook and a lever, but not a "catch," while the text of the '928 specification discloses "clips" that have a hook *and* a catch. Furthermore, the alternative phrasing of the "clip" language, "one of the hook and catch being mounted on one of the lid and side wall of the housing and the other of the hook and catch being mounted on the other of the lid and side wall of the housing," '928 Patent col.1 l.66–col.2 l.5, is conspicuously absent from the '831 patent. The notion that the '831 patent contemplated "clips" having a "catch," and that

---

[5] This claim language appears in independent claims 1, 3, and 6 of the '928 patent. '928 Patent col.8 ll.35–40; *id.* col.9 ll.8–13; *id.* col.10 ll.19–24. The relevant language in claim 6 contains trivial differences with the relevant language of claims 1 and 3, which is identical.

it further contemplated that the "catch" might be mounted to the side wall, then, strains credulity.

This conclusion is supported by a closer look at the functioning of the invention described in the '831 patent. Hamilton Beach does not appear to dispute that one purpose of the '831 patent is to incorporate a slot capable of holding a utensil that is "removably engageable with the handle of the [slow cooker] lid." '831 Patent col.10 ll.36–37. It is evident from each figure disclosed in the '831 specification that a configuration with a catch mounted on the side wall—and the hook and lever (i.e., the clip) mounted on the lid—would interfere with the operation of the clip. *See* '831 Patent figs.1–4. It therefore is no accident that although both the '831 and '928 patent specifications *disclose* a utensil with a storage slot, the utensil and storage slot are only *claimed* in the '831 patent. (*See* Expert Report of Lee A. Swanger, Ph.D., P.E., Def.'s Mem. Supp. Mot. Summ. J. Ex. 53, ¶ 16.)

Hamilton Beach is also incorrect to suggest that acceptance of Sunbeam's new matter argument is tantamount to limiting the '831 patent to a single embodiment. Acceptance of Sunbeam's new matter argument does not limit the '831 patent to a single embodiment, but rather only to what it in fact disclosed; a rejection of Sunbeam's argument, by contrast, would expand the '831 disclosure to embodiments that were not even suggested or contemplated. As explained above, the text of the '831 specification, and the functioning of the invention described therein, fails to suggest a slow cooker having "clips" that include a "catch" mounted to the side wall. Further, as Sunbeam points out, the presence of terms such as "preferred" in the '831 specification does not indicate that a slow cooker with a lever and hook mounted to the side wall and a catch mounted on the lid was

23

only a preferred embodiment. Instead, the use of such terms merely indicates that the catch

need not be integrated with the handle and might be shaped differently.

> It is preferred that the catch 42*a* be integrally formed with and extend
> outwardly from the handle 42, and, specifically from an end of the handle 42
> proximate the edge 40*a* of the lid 40. *While this configuration of the catch 42*a
> *is preferred*, it is not intended to be limiting. As such, it [is] further
> contemplated that the catch 42*a* be formed separately from the handle 42 or
> that the catch 42*a* be shaped differently than described above, provided the
> catch 42*a* is still capable of functioning as described herein.

'831 Patent col.5 ll.38–46 (emphasis added).

Sunbeam's argument, which the Court accepts, is elegant in its simplicity: Hamilton

Beach, by its own admission, wrote claims to cover Sunbeam's Cook & Carry. In doing so, it

had to redefine both the meaning and location of the "clip," injecting new matter into the

'928 patent to support its broader claims, as Sunbeam's "clip" was the '831's antithesis.

Consequently, Hamilton Beach cannot meet its burden to establish priority to the filing date

of the '831 application.

With the priority issue settled, Sunbeam's burden to prove invalidity by clear and

convincing evidence is a *fait accompli*. The '928 patent application was filed June 4, 2010,

making the relevant critical date for on-sale purposes June 4, 2009. Hamilton Beach admits

that its Stay or Go slow cookers are commercial embodiments of the '928 patent, and that it

has been selling Stay or Go slow cookers since at least as early as 2005. This renders the

'928 patent invalid under the on-sale and public use bars of 35 U.S.C. § 102(b). The '928

patent is also invalid as anticipated under § 102(a), as Hamilton Beach has not come

forward with evidence to rebut the presumptive invention date of June 4, 2010, and

Hamilton Beach admits that it was aware of Sunbeam's Cook & Carry as early as January

2010, and further that its patent attorney drafted claims specifically to cover the Cook &

24

Carry. For all of the reasons above, the Court will grant Sunbeam summary judgment on its new matter defense.

### 2. On-sale bar

The on-sale bar applies, and will invalidate a patent, when "there was a definite sale or offer for sale of the claimed invention prior to the critical date, defined as one year prior to the U.S. filing date to which the application was entitled." *Linear Tech. Corp. v. Micrel, Inc.,* 275 F.3d 1040, 1047 (Fed. Cir. 2001) (quoting *Mas-Hamilton Grp., Inc. v. LaGard, Inc.,* 156 F.3d 1206, 1216 (Fed. Cir. 1998)) (internal quotation marks omitted). Sunbeam argues that even if the '928 patent was entitled to the '831 patent's priority date—and as set forth above, in the Court's opinion it is not—the '928 patent is nevertheless invalid under the on-sale bar of 35 U.S.C. § 102(b).

Under the Supreme Court's decision in *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55 (1998), the on-sale bar begins to run upon the satisfaction of two conditions. First, the claimed invention "must be the subject of a commercial offer for sale." *Id.* at 67. "Only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)." *Group One, Ltd. v. Hallmark Cards, Inc.,* 254 F.3d 1041, 1048 (Fed. Cir. 2001). Moreover, the invention that is the subject of the commercial offer must inherently satisfy each claim limitation of the patent. *Scaltech, Inc. v. Retec/Tetra, LLC,* 269 F.3d 1321, 1329 (Fed. Cir. 2001). "Second, the invention must be ready for patenting." *Pfaff,* 525 U.S. at 67. This condition may be satisfied in at least two ways: by proof that the invention was reduced to practice before the critical date, "or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that

25

were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.* at 67–68.

Application of the on-sale bar is a question of law. *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 889 (Fed. Cir. 1999). An accused infringer asserting invalidity based on the on-sale bar must demonstrate its conditions are met by clear and convincing evidence. *Elan Corp. v. Andrx Pharms., Inc.*, 366 F.3d 1336, 1340 (Fed. Cir. 2004).

The earliest possible priority date that the '928 Patent is entitled to is March 1, 2006—the date of the filing of the '831 Patent application. Therefore, the relevant critical date is March 1, 2005.

### a.  First condition: commercial offer for sale

Sunbeam asserts that Hamilton Beach's own documents prove that it made commercial offers to sell its Stay or Go slow cooker, an embodiment of the '831 and '928 patents, to no less than seven customers before the critical date of March 1, 2005: ███████

████████████████████████████████████████████████████████

Sunbeam also claims that Hamilton Beach's supplier (i.e., the overseas manufacturer of the Stay or Go), ██████ offered the Stay or Go for sale to Hamilton Beach. This is relevant as well as there is no "supplier" exception to the on-sale bar. *See Special Devices, Inc. v. OEA, Inc.*, 270 F.3d 1353, 1357–58 (Fed. Cir. 2001).

With respect to the seven retail customers, Sunbeam submits a veritable tome of evidence chronicling meetings and presentations attended by Hamilton Beach representatives and retail customers' buying agents. At these meetings and presentations, Hamilton Beach presented concepts for its Stay or Go slow cooker, quoted prices (including suggested retail prices, and retailer's costs or "invoice costs"), showed computer

26

presentation slides that included Computer Aided Design (CAD) drawings appearing to depict slow cookers with all of the limitations claimed in the '928 Patent, and promised dates by which the Stay or Go would be available. At least some of the presentation slides referenced product model numbers that correspond with Stay or Go cookers, such as "Model Number 33163."

Hamilton Beach emphasizes that while Sunbeam sets forth a great deal of evidence, it glosses over the relevant standard established by the Federal Circuit in *Group One* with respect to what constitutes a commercial offer for sale. To repeat the statement set forth above, the *Group One* court said: "Only an offer which rises to the level of a commercial offer for sale, *one which the other party could make into a binding contract by simple acceptance* (assuming consideration), constitutes an offer for sale under § 102(b)." 254 F.3d at 1048 (emphasis added). Sunbeam's on-sale bar argument, according to Hamilton Beach, "is entirely rooted in evidence of activity falling short of valid commercial offers" under the law. Hamilton Beach asserts it was not in a position to offer the claimed invention as part of a binding contract before the critical date, and more importantly, it never made any "offers" to its customers as true contractual "offers" are understood in the relevant market—the small kitchen appliance industry. Hamilton Beach explains that the meetings and presentations (apparently known in the industry as product "line reviews") attended by Hamilton Beach representatives and customer buying agents represent the beginning of a customer's decision to buy, rather than the end. Indeed, Hamilton Beach notes that Sunbeam's own group marketing manager affirmed that "line reviews" are "an opportunity to present new products, whether [they are] in the conceptual phase or ready to be marketed. And to just get feedback from the buyer, you know, do they like the

27

product, do they think it is something that their customers, their consumers will accept."
(Prelim. Inj. Hr'g Tr. 221:25–222:20.)

To its point concerning what are understood as true commercial "offers" in the small kitchen appliance industry, Hamilton Beach states that vendor agreements and buyers' purchase order terms and conditions make clear that the *purchase order* forms the sales contract between the parties. Therefore, companies in the industry view purchase orders as offers to buy. Vendors such as Hamilton Beach or Sunbeam accept these purchase orders by shipping the product ordered or agreeing to ship the product. An exemplary vendor agreement cited by Hamilton Beach provides:



(Pl.'s Mem. Opp. Def.'s Mot. Summ. J. Ex. I, at HBB022880 (emphasis added).) A representative purchase order agreement provides, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* Ex. FF, at HBB048474.) Another purchase order states, "▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮." (*Id.* Ex. GG, at HBB022846 (internal quotation marks omitted).) Further, the only vendor agreement produced by Sunbeam states, *inter alia*, "▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮." (*Id.* Ex. HH, at SB0032472.) In light of this evidence, Hamilton

Beach argues it is clear that companies in the relevant industry view their purchase orders as the *bona fide* offers to buy, and that the parties' customers would not understand communications at events such as line reviews as being formal "offers."

Hamilton Beach's argument that the purchase order forms the sales contract between the parties in the small kitchen appliance industry is persuasive. Hamilton Beach cites the Federal Circuit's unpublished opinion in *Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc.*, 300 F. App'x 904 (Fed. Cir. 2008), for the proposition that practice in the relevant industry—here, the small kitchen appliance industry—is relevant to whether Hamilton Beach's activities constitute a commercial offer for sale. *See id.* at 905–06. The court's prior opinion in *Lacks*, which instructed the district court to consider on remand whether "Lacks' documents of its sales activities r[o]se[ ] to a contractual offer for sale" in light of automobile industry practice, *id.* at 909, certainly stands for that proposition, despite the dissent's objection that "[s]uch industry-specific, local, and subjective criteria are a regression toward the imprecision of the discredited 'totality of the circumstances' . . . standard purposefully rejected by the Supreme Court in *Pfaff*." *Lacks*, 322 F.3d 1335, 1352 (Fed. Cir. 2003) (Newman, J., dissenting in part). In the dissent's view, "Determination of whether there has been an offer of sale in terms of § 102(b) requires objective application of uniform contract law, not indulgence based on disputed local custom in the automobile tire wheel cladding business." *Id.*

Under either view, Hamilton Beach is right to insist that the purchase order is dispositive. The language contained in the purchase orders and vendor agreements themselves strongly supports that it is the purchase order, and not other communications and interactions between the parties, that forms the sales contract. At the same time, the

testimony of Sunbeam's own representative strongly indicates that meetings, "line reviews," and communications related to them—even if laden with specific price terms (and especially invoice/cost price terms, in contrast with retail prices), availability dates, and model information—in reality serve purposes of forecasting and feedback, and not the consummation of the deal. Thus, the bulk of the evidence Sunbeam submits does not support the contention that Hamilton Beach's activities rose to the level of a commercial offer for sale that would form a contract upon simple acceptance with respect to any of the seven customers. They may have risen to that level under the pre-*Pfaff* and *Group One* case law, but *Pfaff* expressly rejected the flexible "totality" test in favor of "more precise requirements . . . to bring greater certainty to the analysis of the on-sale bar." *Group One*, 254 F.3d at 1047. It is the purchase agreements, and not line reviews, forecasts, and initial communications about upcoming product placements, that are important.

Hamilton Beach's interaction with its supplier, ▮▮▮▮, therefore becomes the critical issue, as the only evidence of a purchase order appears to be the purchase order submitted by Hamilton Beach to ▮▮▮▮ for inventory stock-piling purposes. As noted above, any transaction between Hamilton Beach and ▮▮▮▮ is just as potentially invalidating as any other transaction, as there is no "supplier" exception to the on-sale bar. *OEA*, 270 F.3d at 1357–58.

Before looking more closely at Hamilton Beach's purchase order, a wrinkle with respect to the relevant "offer" should be addressed. In the small kitchen appliance industry, and indeed in a typical commercial scenario where a manufacturer such as Hamilton Beach transmits a purchase order to a vendor or supplier such as ▮▮▮▮, the buyer makes the initial contractual communication, which is an offer to *buy*. The vendor objectively

30

manifests its acceptance by shipping the product ordered or by agreeing to ship it. Viewed from a formal perspective, then, there is no offer for *sale*. Fortunately, the Federal Circuit's opinion in *Micrel* addresses this issue. *Micrel* indicates that where there is an offer to *buy* the invention in the form of a purchase order, the question becomes whether the offeree accepts the offer to buy before the critical date, "because if so, [the offeree] entered into a binding contract to sell the [invention] that invalidates the . . . patent." 275 F.3d at 1052.

      Purchase Order Number ███ ("████"), bearing Hamilton Beach's logo and the signature of its authorized agent, is dated February 8, 2005, and directed to vendor "████████" in "███████████." (Def.'s Mem. Supp. Mot. Summ. J. Ex. 29, at HBB048493.) The shipping address is a Hamilton Beach facility in Memphis, Tennessee, and the billing address is a Hamilton Beach facility in Glen Allen, Virginia. (*Id.*) ██████ requests ████ units of slow cooker model 33163TC, admitted by Hamilton Beach to be a Stay or Go slow cooker (Tidey Dep. 67; *see also* Def.'s Mem. Supp. Mot. Summ. J. Ex. 17, at HBB017188), which would inherently satisfy each claim limitation of the '928 Patent, at a unit price of "████." (*Id.* Ex. 29, at HBB048493.) The purchase order is therefore unequivocally an offer to *buy* the invention. The question becomes whether or not ██████ ever accepted the purchase order and completed the contract.

      Sunbeam acknowledges that the parties never entered into a formal contract. (*Id.* at 32.) It argues, however, that the parties' pre-critical date conduct confirms ██████ agreed to manufacture and sell at least ████ pieces of the Stay or Go slow cooker, and more to the point, that the pre-critical date conduct "recognized the existence of a contract for ██████ to manufacture and sell the Stay or Go slow cooker to Plaintiff." (*Id.* at 31.)

Sunbeam's evidence with respect to ▮▮▮▮▮'s acceptance is an email thread between a Hamilton Beach representative named Ken Dail and a ▮▮▮▮ representative named "Autumn." (*Id.* Ex. 71.) All emails in the thread are dated February 25, 2005. In the initial email, Dail writes to Autumn, "Have you received the ship plan for this model?" Autumn responds:



Any question, please contact us without hesitance.

Best wishes,
Yours truly,
Autumn

(*Id.* at HBB024624–25.)

Sunbeam looks to the Uniform Commercial Code ("UCC"), and specifically UCC § 2-207(3), providing that "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract," to support its contention that the pre-critical date conduct of the parties recognized the existence of a contract for ▮▮▮▮ to manufacture and sell the Stay or Go to Hamilton Beach. The UCC is undoubtedly an important reference point, as the *Group One* court indicated that "[a]s a general proposition," 254 F.3d at 1047, it would look to the UCC "to define whether . . . a communication or series of communications rises to the level of a commercial offer for sale." *Id.* But the *Group One*

court specifically held that commercial offer analysis should be guided not only by the UCC, but "under the law of contracts as generally understood," *id.*, for "there is a substantial body of general contract law, widely shared by both state and federal courts, to which courts can resort in making these determinations." *Id.* at 1048 (citing Arthur Linton Corbin, *Corbin on Contracts* (1964); John D. Calamari & Joseph M. Perillo, *The Law of Contracts* (4th ed. 1998)); *see also Scaltech*, 269 F.3d at 1328 (noting the commercial offer determination is governed by federal common law). Indeed, the *Group One* court noted "[t]he Supreme Court has . . . cited the Restatement of Contracts with approval in the commercial contract law context." *Id.* (citing *Mobil Oil, Inc. v. United States*, 530 U.S. 604, 606–10 (2000)).

While a contract may not necessarily be established under the familiar UCC "battle of the forms" provision cited by Sunbeam, UCC § 2-207(3), as that provision's reference to "conduct" refers principally to performance curing an otherwise unenforceable agreement, *see, e.g.*, Richard A. Lord, 2 *Williston on Contracts* § 6:19 (4th ed.) (Westlaw, updated May 2012), the Court has little difficulty concluding the email presents sufficient evidence of acceptance, and thus of the existence of a contract, under general contract law principles.

Under those principles, "to accept an offer an offeree must make a manifestation of assent to the offeror." *Micrel*, 275 F.3d at 1052 (citing Richard A. Lord, *Williston on Contracts* § 4:1 (4th ed. 1990)). "In order to be effective, an acceptance must *objectively* manifest the offeree's assent." *Id.* (citing *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 633 (R.I. 1998)). The email from ▓▓▓▓'s representative—in response to Hamilton Beach's query of when ▓▓▓▓ '▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓,'' confirmed receipt of the purchase order at issue, ▓▓▓▓; acknowledged the specific quantity ordered (▓ pcs) of the model 33163 slow cooker; stated that '▓▓▓▓▓

33

████████████████████████████████"; described the arranging of "QC

inspection"; and promised a ship date. This is sufficient evidence of an objective

manifestation of assent on the part of ██████, and of an invalidating sale under § 102(b).

Hamilton Beach protests that the designation of "F.O.B. ████████" on ██████

"means that Hamilton Beach would take possession of any purchased goods once the

containers were loaded onto the ship in ██████," and that "any such sale would not have

been consummated in the United States, as required under 35 U.S.C. § 102(b)." Offers for

sale made by foreign parties that are directed to United States customers at their place of

business in the United States, however, qualify as invalidating sales under § 102(b). *See In*

*re Caveney*, 761 F.2d 671, 676–77 (Fed. Cir. 1985); *see also C.R. Bard, Inc. v. M3 Sys., Inc.*, 157

F.3d 1340, 1376–77 (Fed. Cir. 1998) (Mayer, C.J., concurring); *id.* at 1358 (Newman, J.,

dissenting). If offers for sale made by foreign parties and directed to U.S. customers qualify

as invalidating sales, the Court can discern no reason why an accepted offer to buy by a

United States customer directed to a foreign entity should not also qualify. Accordingly, the

Court finds that *Pfaff*'s first condition—that the claimed invention be subject to a

commercial offer for sale—is satisfied by the ██████ transaction.

### b.  Second condition: ready for patenting

The second condition necessary to trigger the on-sale bar is that the product be

"ready for patenting." This condition is satisfied if, prior to the critical date, (1) the

invention was reduced to practice or (2) "the inventor had prepared drawings or other

descriptions of the invention that were sufficiently specific to enable a person skilled in the

art to practice the invention." *Pfaff*, 525 U.S. at 67–68. An invention is reduced to practice

when it functions according to its intended purpose. *Atlanta Attachment Co. v. Leggett &*

34

*Platt, Inc.*, 516 F.3d 1361, 1366 (Fed. Cir. 2008). The invention functions according to its intended purpose, in turn, "when there is a demonstration of its workability or utility." *Id.* at 1367.

Hamilton Beach argues that just as the invention was not ready to be offered for sale prior to the critical date, so too was the invention not yet ready for patenting. The Court will assume this argument for purposes of decision, because Sunbeam has submitted strong evidence that Hamilton Beach prepared, prior to the critical date, drawings and other descriptions of the invention that would have been sufficiently specific to enable a person having ordinary skill in the art to practice the invention.

*Pfaff* expressly taught that while reduction to practice ordinarily constitutes the best evidence that an invention is complete, it is not the only sufficient evidence:

> [J]ust because reduction to practice is sufficient evidence of completion, it does not follow that proof of reduction to practice is necessary in every case. Indeed, both the facts of *The Telephone Cases* and the facts of this case demonstrate that one can prove that an invention is complete and ready for patenting before it has actually been reduced to practice.

525 U.S. at 66. In *The Telephone Cases*, the Supreme Court upheld issuance of a patent to Alexander Graham Bell even though he filed his application before constructing a working telephone. The Court noted that his "specification . . . did describe accurately and with admirable clearness his process . . . and he also described, with sufficient precision to enable one of ordinary skill in such matters to make [his telephone.]" 126 U.S. 1, 535 (1888). The Court concluded this was enough, for "[t]he law does not require that a discoverer or inventor, in order to get a patent . . . must have succeeded in bringing his art to the highest degree of perfection." *Id.* at 536.

Sunbeam argues that as

35

the Stay or Go slow cooker, aside from the clips and the gasket, is an ordinary slow cooker, the [CAD] drawings, model, and product description shown to ███████ and [Hamilton Beach's] other customers are specific enough to enable one of skill in the art to practice the invention of the '928 patent. Clearly, the invention claimed in the '928 patent is a simple mechanical device for which a CAD drawing, a model, and a list of basic product features more than constitutes an enabling disclosure.

(Def.'s Mem. Supp. Mot. Summ. J. 33–34.)

*Pfaff* and Federal Circuit precedent applying it make clear that what is important is that person having ordinary skill in the art could practice the invention at the relevant time with drawings, descriptions, and similar tools. To this point, the Federal Circuit has noted on multiple occasions that the need to complete "fine-tuning" of an invention after its sale will not "undermine the conclusion that the invention is ready for patenting." *STX, LLC v. Brine, Inc.*, 211 F.3d 588, 591 (2000) (citing *Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1332–34 (Fed. Cir. 1998)). Further, the *STX* court indicated that the sale of the product in a commercial quantity would also tend to negate the conclusion that the product was not ready for patenting. *Id.* With these cases and principles in mind, the detailed CAD drawings and descriptions from Hamilton Beach's meetings with retail customers, along with an invalidating sale where some ███ units of the Stay or Go were ordered, amply show that the invention was ready for patenting.

In light of the ███████ transaction and the sophisticated and detailed drawings and descriptions of the invention in evidence, Sunbeam has met its burden of proving its § 102(b) on-sale bar defense by clear and convincing evidence. The Court therefore grants summary judgment of invalidity on this ground.

### 3.   Public use bar

Citing the apparent nonconfidential nature of Hamilton Beach's interactions with retail buyers described in the on-sale bar evidence above (Sunbeam notes that presentations were not marked as confidential, there were no nondisclosure agreements entered into by the parties, and that Hamilton Beach even made attempts to verify Sunbeam's strategies in presenting its products to retailers), Sunbeam argues the '928 patent must also be invalidated under the public use bar of 35 U.S.C. § 102(b). Hamilton Beach responds that *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376 (Fed. Cir. 2007), which held that the public use bar is only triggered where the claimed invention is used for its intended purpose, demands dismissal of Sunbeam's public use defense.

In *Motionless Keyboard,* the inventor of two patented ergonomic keyboard devices disclosed his invention "to his business partner, potential investors, a friend, and a typing tester before the critical date." *Id.* at 1383–84. In all of the disclosures but one, the keyboard device had not been connected to a computer. *Id.* at 1385. And in the disclosure where the keyboard device was connected to a computer, a binding nondisclosure agreement was signed. *Id.* Under these circumstances, the Federal Circuit held that the invention had not been used for its intended purpose—"to transmit data in the normal course of business." *Id.* The disclosures instead only "visually displayed" the invention "without putting it into use." *Id.*

Hamilton Beach contends, and the Court agrees, that its interactions with retail buyers are indistinguishable from the disclosures in *Motionless Keyboard*. Hamilton Beach's invention was only *described*, and not *used*, for its intended purpose in the line review presentations it conducted for its customers—indeed, Hamilton Beach points out that any

37

slow cooker models shown at the line reviews were nonfunctioning products that did not

have a power cord. (Tidey Dep. 38:18–39:7.) Under these facts, Sunbeam has not met its

burden to establish its public use defense. The Court therefore denies Sunbeam summary

judgment on this ground.

### 4. Obviousness

A patent claim is invalid as obvious "if the differences between the subject matter

sought to be patented and the prior art are such that the subject matter as a whole would

have been obvious at the time the invention was made to a person having ordinary skill in

the art." 35 U.S.C. § 103(a). The Supreme Court's decision in *KSR International Co. v.*

*Teleflex, Inc.*, 550 U.S. 398 (2007), reaffirmed four factors derived from *Graham v. John*

*Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966), that serve as the guide for the Court's

obviousness inquiry: (1) the scope and content of the prior art; (2) the differences between

the prior art and the asserted claims; (3) the level of ordinary skill in the art; and (4) any

secondary considerations of obviousness. *KSR*, 550 U.S. at 406, 415.

The Court can properly grant Sunbeam's motion for summary judgment on the

ground of obviousness only if the "factual inquiries into obviousness present no genuine

issue of material facts." *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1366 (Fed. Cir.

2011) (quoting *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991)) (internal

quotation marks omitted). Obviousness is a question of law, based on underlying facts. *Id.*

(citing *Media Techs. Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1337 (Fed. Cir. 2010)).

Sunbeam argues that each and every element of the '928 patent claims is known in

the prior art. Pointing to those elements and the patents in which they are disclosed in a

bulleted list, Sunbeam asserts that it is commonsensical that one of ordinary skill in the art

would look to cooking and food containment to devise a slow cooker with a sealable lid that would allow the cooker to be transported. Noting over-center-clips have been used to seal lids or covers for cooking vessels and food containers since the early twentieth century, Sunbeam argues it would have been obvious to combine a gasket and over-the-center clips for their well-known functions of sealing and containment to create a "securely transportable slow cooker." (Def.'s Mem. Supp. Mot. Summ. J. 41.) "Put simply, the inventors slapped over-the-center clips onto a slow cooker to provide an additional, obvious solution to the known problem of safely and conveniently transporting slow cookers." (*Id.*) Sunbeam then proceeds to list prior art combinations that it asserts would have been obvious to combine with respect to each asserted claim.

Sunbeam devotes significant energy to secondary considerations relevant to the obviousness inquiry, but those considerations need not be covered in significant detail, because the Court agrees with Hamilton Beach that Sunbeam cannot merely present a list of prior art combinations and then leave it to the Court to determine how the references fit together to render the claims obvious. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008). Because Sunbeam has failed to set forth sufficient evidence showing *why* it would have been obvious to combine elements from the prior art references it cites, the Court denies Sunbeam summary judgment on this ground.

IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Sunbeam Products, Inc.'s Motion, and DENIES Hamilton Beach Brands, Inc.'s Motion.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

39

It is SO ORDERED.

```
_____/s/_____
James R. Spencer
United States District Judge
```

ENTERED this __13th___ day of August 2012